USDC IN/ND case 1:24-cv-00149-HAB-SLC   document 5   filed 03/28/24   page 1 of 7

02D01-2403-CT-000227
Allen Superior Court 1

Filed: 3/28/2024 4:15 PM
Clerk
Allen County, Indiana
DM

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE ALLEN SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF ALLEN | ) | CAUSE NO.: |

| | |
|---|---|
| DONAHI WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DO IT BEST CORP., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff alleges against Defendant as follows:

1. The Plaintiff is Donahi White, a qualified individual with a disability who has worked for Defendant at all times material to this Complaint and has met her employer's legitimate expectations. Plaintiff alleges Defendant has discriminated against and retaliated against her on the basis of her disability/perceived disability/record of impairment in violation of her rights pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") and retaliated against Plaintiff for utilizing time off work pursuant to the Family Medical Leave Act ("FMLA") to tend to her serious medical condition.

2. Defendant is Do It Best Corp, a company doing business at 1626 Broadway, Suite 100, Fort Wayne, IN 46802. Defendant is an "employer" for the purposes of the ADA and FMLA. Defendant's Registered Agent is Gary Furst, 116 Broadway, Suite 100, Fort Wayne, IN 46802.

3. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 22, 2023, a copy of which is attached hereto,

–1–

incorporated herein, and made a part hereof as "Ex. A." The EEOC issued its Determination and Notice of Right to Sue on December 31, 2023, a copy of which is attached hereto and made a part hereof as "Ex. B." All jurisdictional prerequisites have been met and all administrative remedies exhausted for the filing of this lawsuit.

4. Plaintiff has worked for Defendant since 2006 as an "A/R Specialist". Plaintiff suffers from asthma. At the writing of the above-mentioned Charge of Discrimination, Plaintiff was still employed by Defendant, and was on FMLA leave for mental health reasons due to her treatment by Defendant.

5. As early as 2018, Plaintiff reported that she was experiencing health problems related to workplace pollution.

6. In June 2021, Plaintiff was diagnosed with asthma and began to experience worsening symptoms from her asthma partially due to the location of her cubicle next to a new storage space. Plaintiff made requests for the reasonable accommodation of relocating either her cubicle or the new storage space due to her extreme sensitivity to dust, and nothing was done to accommodate her. After Plaintiff's initial requests, there was yet another storage space added near her cubicle, which further aggravated her disability.

7. Instead of accommodating Plaintiff's disability, Defendant argued that Plaintiff's condition was not caused by workplace pollution and suggested that a suitable accommodation would be for Plaintiff to wear a mask to filter any dust. Plaintiff's asthma eventually became so severe that she was approved for intermittent FMLA.

8. Plaintiff's disability and Respondent's disregard of her request for reasonable accommodations caused Plaintiff to need to utilize her intermittent FMLA over a period of

–2–

    about 12 months.

9. After utilizing FMLA, Plaintiff suffered retaliation from Defendant. This was especially problematic in her relationship with her manager, John Furrow.

10. Mr. Furrow began treating Plaintiff differently than other employees in regards to requests for flex time, a perk that is made available to all Do It Best Team Members.

11. In early February 2022, sometime after Plaintiff returned to work from utilizing FMLA, Plaintiff entered into a verbal agreement John Furrow to work an abbreviated schedule. Plaintiff needed to leave work 2.5 hours early for 2 weeks because her childcare provider was unavailable the weeks from on or about February 17th, 2022, to on or about March 4th, 2022. At the time, John Furrow indicated the abbreviated schedule would not be a problem.

12. When on or about February 17th came around and Plaintiff needed to leave early, John Furrow implied that Plaintiff had not given him notice or had lied about the agreement. He was visibly upset and told Plaintiff it made him uncomfortable for her to leave early.

13. During the first week of the abbreviated schedule, Plaintiff's father's health condition degraded to life threatening, and she had to fly out of state to see him. Unfortunately, Plaintiff's father passed that week and she spent the week out of town helping arrange his affairs.

14. When Plaintiff returned to work on or about Monday, February 28th, she informed John Furrow that she would need to use available paid time off to travel to her father's funeral with her children. Plaintiff's father's funeral was scheduled for on or about Friday, March 11th, and due to the costs of airline tickets for herself and her two daughters, she had to

Defendant's Exhibit A  Page 3 of 14

make a quick decision to book affordable tickets which would take her out of work beginning on or about Monday, March 7th.

15. Later in the day on or about February 28th, Plaintiff needed to leave according to her abbreviated schedule, and again John Furrow indicated he was uncomfortable. Plaintiff reminded him of their agreement and Furrow indicated they would talk the following day.

16. On or about March 1st, Plaintiff met with John Furrow and explained why she set her travel plans up the way she did. Plaintiff states that Furrow was clearly upset with her purchasing airline tickets before she knew if she would get approval first. Furrow also told her that they should have put their abbreviated schedule agreement in writing. Plaintiff found that Furrow treated her differently than other employees and was insensitive in the face of circumstances that were beyond her control, including her father's death and funeral arrangements, providing appropriate care for her children, and an extreme flare up of her asthma.

17. Upon returning from her father's funeral on or about March 17th, Plaintiff received a written counsel for leaving 2.5 hours early without manager approval. This was despite Plaintiff's verbal agreement with John Furrow for an abbreviated schedule.

18. Plaintiff had another incident with John Furrow in which he put a 2-hour time limit on her ability to make-up time by working from home and/or at the office. John Furrow indicated that this was because Plaintiff had an unreliable track record the "past 12 months" from approximately early 2021 to early 2022. This implies that Plaintiff's use of FMLA in the "past 12 months" made her unreliable. Other similarly situated employees

who do not have disabilities and have not utilized FMLA have not been deemed unreliable and do not have time limits on what time they can make up from home.

19. In March 2023, Plaintiff was passed up for a job in a different department because she was on FMLA. The job was given to an employee that was only there for five years while Plaintiff has been with Do It Best Corp for seventeen years. This job would have afforded the Plaintiff a higher pay rate and would have met her request for accommodation to be moved from the area that was causing her exacerbation of her illness.

20. Around this time, Plaintiff was given a three day, unpaid, suspension the day after reapplying for FMLA, while out sick on FMLA.

21. As a result of her treatment at Do It Best Corp., Plaintiff began to experience mental health problems and eventually suffered a mental breakdown. In April 2023, Plaintiff was diagnosed with Moderate Recurrent Major Depression and Generalized Anxiety Disorder and her medical providers determined that she could not work and required FMLA.

22. When Plaintiff's health care providers determined that she could return to work they stated that she should start on an abbreviated schedule. Defendant refused to allow her accommodation to work an abbreviated work schedule and insisted that she return to work full time.

23. Despite the fact that a medical provider documented that Plaintiff should not work full time until July 28, 2023, and was only authorized to return to work for four hours a day, Defendant insisted that she could only return to work if she would work full time.

24. Plaintiff returned to work on July 10, 2023, against medical advice, in order to avoid being fired from her job.

25. After filing her Charge of Discrimination, Plaintiff continued to experience discriminatory and retaliatory treatment from her employer, specifically her manager, John Furrow.

26. In August 2023 Plaintiff was denied a bonus and told that she was not allowed to work remotely for the duration of one year.

27. In December 2023, Mr. Furrow accused Plaintiff of "throwing a tantrum" after he spoke to her in a demeaning and derogatory way. When Plaintiff reported his behavior to Human Resources, someone notified Mr. Furrow and he informed Plaintiff that "HR did not feel that they needed to get involved."

28. During Plaintiff's annual review, Mr. Furrow gave Plaintiff a negative review based on her "attitude" and stated that he heard her make "sighing sounds" when she is annoyed or frustrated with team members. Plaintiff sighs and gasps for air when she experiences difficulty breathing because of her asthma.

29. Mr. Furrow also informed Plaintiff that she is going to be placed in a "development plan" which is something that is done to employees who are defined as "failing."

30. Mr. Furrow provided no examples of performance objectives that were not being met and Plaintiff believes that the negative review and development plan will be used as a pretense to fire her.

31. Plaintiff has been treated badly by co-workers since she returned from FMLA in July 2023, and Plaintiff believes that Defendant released information about her medical condition to other employees.

32. Defendant's discriminatory and retaliatory conduct was the direct and proximate cause of

Plaintiff suffering the loss of job-related benefits, including income, and subjected her to emotional distress, humiliation, embarrassment, inconvenience, and other damages and injuries. Plaintiff seeks compensatory damages, including reasonable attorney fees and costs.

33. Furthermore, Defendant's discriminatory and retaliatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, warranting an imposition of punitive damages and/or liquidated damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, punitive damages, liquidated damages, reasonable attorney fees and costs, and all other just and proper relief.

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**CLOSE & HITCHCOCK, LLP**

 /s/ Jennifer L. Hitchcock
Jennifer L. Hitchcock, #34635-02
116 E. Berry Street, Suite 300
Fort Wayne, IN 46802
Telephone:   (260) 408-6818
Facsimile:    (260) 498-2655
E-mail:         jennifer@closehitchcock.com
*Attorney for Plaintiff*

–7–